# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY

ROSEMARY ANGELO,                    )
TRUSTEE, *et al.*,                  )
                                    )
                                    )
    Appellants,     )
                                    )
                                    )
    v.              )    C.A. No: CPU4-19-004547
                                    )
SOUTHERNESS MAINTENANCE             )
CORP.,                              )
                                    )
    Appellee.       )

Reserved: November 17, 2020
Decided: January 13, 2021
Amended: January 15, 2021[1]

Ronald and Rosemary Angelo
611 Southerness Drive
Townsend, DE 19734
*Defendants-Below/Appellants*

Chad J. Toms, Esquire
Quinn T. Griffith, Esquire
Whiteford Taylor Preston LLC
The Renaissance Centre
405 North King Street, Suite 500
Wilmington, DE 19801
*Attorneys for Plaintiff-Below/Appellee*

## DECISION AFTER TRIAL

---

[1] In its January 13, 2021 Order, the Court inadvertently ruled on the issue of attorney's fees, which is still pending.

**HORTON, J.**

## FACTUAL AND PROCEDURAL HISTORY

Since November 15, 2015, Ronald Angelo and Rosemary Angelo (Appellants/Defendants-Below–the "Angelos") have served as co-trustees under a revocable trust that holds title to 611 Southerness Drive, Townsend, Delaware (the "Property"). The Property is located within Legacy at Odessa National, a common-interest, 55-year and older community (the "Community") in which Southerness Maintenance Corporation operates (Appellee/Plaintiff-Below – "Southerness"). Southerness is not the developer of the Community. Rather, Southerness maintains and manages the common areas and amenities within the Community, and in return, charges assessments to pay for those functions.

In 2017, the Angelos began deducting a certain amount each month from the full amount of their assessments. On July 18, 2019, Southerness filed an action in the Justice of the Peace Court against the Angelos for unpaid assessments in the amount of $2,576.00, from January 1, 2017, through July 1, 2019. The Justice of the Peace Court held a trial and, on November 15, 2019, ordered judgment in Southerness' favor in the amount of $2,567.00 in unpaid assessments, plus costs and attorney's fees. On November 26, 2019, the Angelos filed an appeal to this Court. In accordance with Ct. Com. Pl. Civ. R. 72.3, Southerness filed a Complaint upon appeal alleging that the Angelos are personally obligated to pay assessments levied

2

by Southerness and asking for this Court to affirm the judgment of the Justice of the Peace Court.

In their Answer, the Angelos allege that the action is based on violations of the law. The Angelos contend that Southerness illegally passed on its fiduciary responsibility to the members of the Community and, by charging fees for Open Space and Common Area that cannot be accessed by a mobility disabled person, is in violation of federal laws protecting the disabled.

## TRIAL

On November 17, 2020, a bench trial was held. Ronald Angelo appeared *pro se* on behalf of himself and the trust. Mr. Angelo indicated that his wife, Rosemary Angelo, did not appear for medical reasons. Prior to opening statements, the Court held a Pre-Trial Conference to streamline the issues to be litigated at trial. Ultimately, the Court emphasized that the focus would be whether or not Southerness is entitled to the assessments it seeks from the Angelos.

David Crane ("Crane")[2] testified on behalf of Southerness. Crane indicated that he is familiar with Southerness's books and records, as well as how it operates within the Community. In support of his position, he discussed the First Amended and Restated Bylaws for Southerness ("Bylaws") that set forth the obligation of owners in the Community to pay assessments and explains the legal actions available

---

[2] The last Board President for Southerness Maintenance Corporation's. He was Board President for a year and a half.

to Southerness to collect those that have been unpaid.[3] Next, Crane testified about the Maintenance Declaration (the "Declaration") that imbued Southerness with the power to assess homeowners and also delineated the homeowners' obligations to pay the monthly assessments.[4] The Declaration specifies that any unpaid assessments shall be considered delinquent. The Declaration further explains that no owner may waive assessments by non-use of the open space or common facilities. The Declaration also explicitly references the applicability of the Bylaws.

Southerness presented four separate deeds of the Property that trace ownership of the property from Mrs. Angelo, originally, to the Angelos, jointly, in a revocable trust.[5] Crane testified that each deed was recorded and each, by their terms, are subject to the terms of the Declaration. Crane further testified that, according to Southerness' ledger statement regarding the Angelos' account from January 1, 2017 through July 8, 2019, $2,576.00 of unpaid assessments are outstanding.[6] Finally, Southerness introduced the Justice of the Peace Court's final order rendering judgment in its favor.[7]

During his case in chief[8], Mr. Angelo argued that it was unlawful for Southerness to assess charges because the developer violated state, federal and

---

[3] Southerness Ex. 1
[4] Southerness Ex. 2
[5] Southerness Ex. 3.
[6] Southerness Ex. 4
[7] Southerness Ex. 5
[8] The vast majority of Mr. Angelo's testimony was comprised of his reading into the record of the substance of various documents he intended to move into the record.

4

county laws related to the construction of the Community. In support of his argument, Mr. Angelo introduced photos of the Community, expense reports from Southerness, Legacy at Odessa National budget reports from 2016, and excerpts from several code sections including: UDC 40.27.420, UDC 40.27.440, UDC 40.27.510, and Delaware Title 25.[9] Mr. Angelo asserts that because of these violations that he decided to offset the assessments and pay only what he thought was an appropriate amount. Mr. Angelo did not describe or provide any evidence as to how he arrived at the offset amount. At one point, Southerness stipulated that violations of the law may have occurred within the Community, but emphasized that any such violations were the responsibility of the Community's developer.

## STANDARD OF REVIEW

This matter is an appeal from the Justice of the Peace Court to the Court of Common Pleas. In reviewing a Justice of the Peace decision, the Court of Common Pleas applies a *de novo* standard of review pursuant to 10 *Del. C.* §9571.[10]

## ANALYSIS

The issue on appeal before the Court is whether or not the homeowners, the Angelos, are obligated to pay the assessments imposed by the homeowners' maintenance corporation, Southerness.

---

[9] Mr. Angelo Ex. 1 through 6. The code violations Mr. Angelo alleged at trial largely mirror those that he presented to the Justice of the Peace Court. More specific information regarding the code violations are discussed in that court's order of November 15, 2019.
[10] 10 *Del. C.* § 9571.

Delaware courts have found that the obligation for homeowners in common-interest communities to pay association assessments is not conditioned on the fulfillment of the association's obligation to the homeowners.[11] In *Linden Green Condominium Ass'n v. Cesar*, this Court previously ruled that whether or not an association failed to repair a pipe that prevented a homeowner from renting his condo to potential tenants, that failure did not absolve him from paying his assessments to the association.[12] Failure to pay assessments causes harm to a community as a whole.[13] Delaware public policy also favors the unconditional obligation to pay assessments despite any liability a homeowners association may bear to the homeowner.[14] Delaware law is quite clear that a party with a grievance against an association is not entitled to withhold payment of lawful assessments.[15]

In the instant case, Southerness introduced specific documentary evidence whose language binds the Angelos to pay the assessments imposed on the Property by the maintenance corporation.[16] The Maintenance Declaration was recorded in August 2000, several years before the Angelos purchased the Property, and states

---

[11] *Linden Green Condominium Ass'n v. Cesar*, 2015 WL 4094242, at *2 (Del. Com. Pl. July 7, 2015).
[12] *Id.*
[13] *Maple Hill Homeowners Ass'n v. Newton*, 2015 WL 1205283, at *5 (Del. Com. Pl. Mar. 9, 2015). The Court acknowledges that the *Maple Hill* case involved condominiums and condominium association fees, however such a structure is akin to the circumstances in the instant case.
[14] *Park Centre Condominium Council v. Epps*, 1997 WL 817875, at *2 (Del. Super. May 16, 1997).
[15] *Id.* at *4.
[16] According to Southerness, in New Castle County, there are two separate corporations within the development of a common-interest community, a service corporation and a maintenance corporation. Once the community is built, the corporations merge and become one. In this case, as of 2017, the maintenance corporation merged with the service corporation, in the process becoming Southerness and rendering the service corporation non-existent.

that by purchasing a home in the Community, each homeowner is subject to the duties and obligations imposed by the maintenance corporation. One such obligation is the payment of regularly imposed assessments. Mr. Angelo did not provide any evidence to suggest otherwise. Therefore, the Angelos' obligation to pay the assessment fees began upon the date that they (or the trust) assumed ownership of the Property.

The majority of Mr. Angelo's case in chief focused on alleged code violations committed by the Community's developer, none of which provide a satisfactory rationale for refusing to pay the total amount assessed by the Community's maintenance corporation, Southerness. The Court made it clear at the outset of trial that allegations regarding violations of law by Southerness were not within the scope of this action.[17] It must also be noted that the Angelos did not properly file any counter-claims against Southerness during this litigation, nor did they initiate any other litigation challenging the lawfulness of Southerness' assessments.[18] Instead, they simply offer the above noted code violations as a basis for refusing to pay the total amount that Southerness assessed. Even if Mr. Angelo had successfully shown

---

[17] Delaware Attorney General's Office has jurisdiction over the enforcement of laws related to a homeowners association fee collection activities. In fact, Mr. Angelo cited to 25 *Del. C.* §317, which explicitly states the Attorney General may enforce a violation of any fee collection that is done on an amenity that is not yet completed and available for residents' use in community development.

[18] While the Justice of the Peace Court indicated in its order that it considered the Angelos' response to constitute a counter-claim, this Court does not make the same determination.

that an offset related to the alleged violations was proper, he failed to describe or provide any evidence regarding the manner in which he arrived at the offset amount.

In Delaware, *pro se* litigants are generally given some latitude regarding the rules of evidence and procedure. However, the Court will provide such leniency only to the extent that it does not affect the substantive rights of all parties.[19] Throughout Mr. Angelo's testimony, the Court explained the difference between testimonial evidence and documentary evidence, as well as the substance of certain provisions of the Delaware Rules of Evidence. Instead of presenting evidence that would tend to support an argument that the Angelos were not obligated to pay the full assessments, Mr. Angelo persisted in attempts to offer evidence that was not permissible or within the scope of the matter. Ultimately, the Angelos' argument was not persuasive. The Court finds that the Angelos were required to pay the full amount of the assessments during the period at issue (i.e. January 1, 2017 through July 1, 2019).

## ADMINISTRATIVE DEFAULT

At the outset of trial, Southerness asked the Court to enter a technical default judgment against Mrs. Angelo, who was not able to attend trial for medical reasons, according to Mr. Angelo. The Court grants the entry of default judgment as to Ms. Angelo.

---

[19] *Maddox v. Isaacs*, 2013 WL 2297030, at *2 (Del. Super. May 7, 2013).

## CONCLUSION

For the foregoing reasons, the Court affirms the decision of the Justice of the Peace Court and enters judgment in favor of Southerness in the amount of $2,576.00 for unpaid assessments and court costs of $61.25.

## ATTORNEY'S FEES

In its Complaint, Southerness requested attorney's fees in the amount of $4,554.50. Any such application to the Court, along with supporting documents, shall be filed on or before February 5, 2021. Any response by the Angelos shall be filed on or before February 19, 2021.

**IT IS SO ORDERED.**

Monica A. Horton
Judge

cc:   Pat Thomas, Judicial Case Manager